IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Charles Edward Gethers, | ) | Civil Action No. 8:12-00347-TMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this
action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final
decision of Defendant Commissioner of Social Security ("the Commissioner"), denying
Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below,
it is recommended that the decision of the Commissioner be reversed and remanded
pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

In January 2008, Plaintiff filed a claim for SSI, alleging an onset of disability date of
November 1, 2007.  [R. 156–58.]  The claim was denied initially and on reconsideration by

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J.
Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last
sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a
hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the
same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C.
§ 1383(c)(3).

the Social Security Administration ("the Administration").  [R. 80–83, 88–89.]  On July 31,

2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 90], and

on November 27, 2009, ALJ  Edward T. Morriss conducted a de novo hearing on Plaintiff's

claims [R. 44–59].

      The ALJ issued a decision on January 14, 2010, finding Plaintiff not disabled.  [R.

67–76.]  The ALJ determined Plaintiff's severe impairment—degenerative disc disease with

chronic neck and shoulder pain—did not meet or medically equal a listed impairment.

[R. 69, Findings 2 & 3.]   The ALJ assessed that Plaintiff retained the following residual

functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light
> work, which is defined as the ability to lift/carry 10 pounds
> frequently and 20 pounds occasionally, stand and/or walk 6
> hours in an 8 hour workday, and sit 6 hours in an 8 hour
> workday, as defined in 20 CFR 404.1567(b) and 416.967(b).
> However, the claimant is restricted from climbing ladders or
> performing work that requires more than limited reaching.

[R. 69, Finding 4.]  Based on this RFC, the ALJ found that, although Plaintiff could not

perform his past relevant work [R. 71, Finding 5], considering his age, education, and work

experience, there were jobs that existed in significant numbers in the national economy

that Plaintiff could perform [R. 72, Finding 9].

      Plaintiff requested Appeals Council review of the ALJ's decision, and upon review,

the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for

further administrative action.  [R. 77–79.]  Specifically, the Appeals Council found that,

although the ALJ determined Plaintiff had a severe impairment of degenerative disc

disease with chronic neck and shoulder pain, the ALJ's decision failed to define the degree

of limitation in Plaintiff's ability to reach and, therefore, failed to define the degree to which this limitation affected the occupational base.  [R. 78.]  The Appeals Council directed that, upon remand, the ALJ should do the following:

> •    Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (CFR 416.945 and Social Security Ruling96-8p).
>
> •    As warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14 and Grant v. Schweiker, 699 F.2d 189, 92 (4th Cir. 1983)).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.
>
> The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[R. 78–79.]

A second hearing was conducted on January 20, 2011.  [R. 23–43.]  The ALJ issued a decision on February 15, 2011, again finding Plaintiff not disabled.  [R. 11–22.]  At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since January 10, 2008, his application date.  [R. 13, Finding 1.]  At Step 2, the ALJ found Plaintiff had a

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

severe impairment of degenerative disc disease with chronic neck and shoulder pain. [R. 13, Finding 2.] At Step 3, the ALJ determined Plaintiff's impairment did not meet or medically equal the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 1.04.[4]  [R. 13, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, which is defined as the ability to lift/carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday, as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is restricted from climbing ladders and is limited to occasional stooping.  He is able to occasionally reach overhead with his left upper extremity.  He is also limited to simple, routine, repetitive tasks.

[R. 13–14, Finding 4.]  Based on this revised RFC, the ALJ found at Step 4 that Plaintiff was unable to perform any past relevant work.  [R. 17, Finding 5.]  At Step 5, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 17, Finding 9.]  Accordingly, the ALJ determined Plaintiff had not been under a disability since January 10, 2008, when he filed his application for SSI. [R. 18, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 6–7], but the Appeals Council declined review [R. 3–5].  Plaintiff filed this action for judicial review on February 6, 2012.  [Doc. 1.]

---

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911 and 416.925.

4

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider all of Plaintiff's impairments; adequately assess and explain Plaintiff's RFC; properly assess Plaintiff's credibility; and properly evaluate whether Plaintiff's chronic cervical kyphosis met or medically equaled Listing 1.04. [Docs. 18, 22.] The Commissioner, however, contends the ALJ's decision is supported by substantial evidence. [Doc. 20.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

5

[Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

7

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See*

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699

9

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.

10

1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

11

claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

14

for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

16

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## MEDICAL HISTORY

On October 22, 2006, Plaintiff presented to the emergency room with complaints of neck pain.  [R. 439–42.]  Treatment notes indicate that, upon examination, Plaintiff's neck was normal and non-tender with no pain with movement, and Plaintiff did not have muscle spasms or decreased range of motion ("ROM").  [R. 440.]  No motor or sensory deficits were indicated, and Plaintiff's reflexes were normal.  [*Id.*]  On January 14, 2007, Plaintiff was seen in the emergency room for neck and back pain due to a fall. [R. 234–52.]  An initial assessment noted Plaintiff's neck was tender, and he had limited ROM.  [R. 250.]  A CT scan of Plaintiff's cervical spine revealed the vertebral body heights were well preserved; alignment was normal; no fracture or soft tissue swelling; changes of

degenerative disc disease with spondylosis at multiple levels; no significant encroachment of the spinal canal; mild foraminal stenosis at several levels due to uncovertebral hypertrophy; and the craniocervical junction was normal. [R. 234.]

On March 28, 2007, Plaintiff was seen in the emergency room complaining of neck pain. [R. 302–21.] Treatment notes reflect that, on examination, Plaintiff's neck was non-tender, and he had painless, though decreased, ROM; muscle spasm; no gross motor or sensory deficits; and normal reflexes. [R. 309.] Plaintiff was prescribed Flexeril and Lortab and directed to follow-up with Dr. Matthew T. Kneidel. [R. 314.] On May 22, 2007, Plaintiff was again seen in the emergency room complaining of neck pain. [R. 282–301.] On examination, Plaintiff had muscle spasm of the neck and a headache but no gross motor or sensory deficits and normal reflexes. [R. 284, 285.] A nurse also noted Plaintiff had limited neck ROM and impaired mobility. [R. 288.]

On November 15, 2007, Plaintiff was seen in the emergency room complaining of neck pain and left shoulder, arm, and forearm numbness. [R. 269–81.] On examination, Plaintiff had a painless ROM in the neck and back and no neck or back tenderness. [R. 270.] The doctor also noted that symptoms associated with Plaintiff's neck pain included sensory loss involving the left shoulder, arm, and forearm; Plaintiff stated he was supposed to have surgery on his vertebrae six months before this emergency room visit and now his left arm was numb.[9] [R. 270, 272, 276.] Plaintiff was diagnosed as having a

---

[9]Plaintiff testified at his hearings before the ALJ that he did not have the surgery and did not seek treatment outside of the emergency room because he did not have health insurance and could not afford other treatment and surgery. [R. 33–34, 49, 52. *But see* R. 36 (testifying that if he had health insurance or could otherwise afford it, he probably would not have the recommended surgery).]

pinched nerve in his neck, with "cervical radiculopathy" noted in brackets.  [R. 277.]
Plaintiff was referred to an orthopedic surgeon.  [R. 273.]

Plaintiff was seen in the emergency room on February 23, 2008 complaining of neck
and head pain.  [R. 253–68.]  Upon evaluation, Plaintiff had a nontender neck and back;
painless ROM in the neck and back; no motor or sensory deficits; and normal ROM in his
extremities.  [R. 255.]  The treatment notes indicate Plaintiff's complaints stemmed from
a chronic cervical spine injury, acute cervical strain, and possible herniated disk.  [*Id.*]  The
treatment notes also conclude that the "[c]linical picture d[id] not suggest torticollis, cervical
radiculopathy, spinal cord compression, febrile illness or meningitis."  [*Id.*]  A fall risk
assessment was completed and no risk was identified.  [R. 257, 258.]   Plaintiff was
prescribed Lortab and told to take Motrin IB as needed and to select a primary care
physician for further evaluation.  [R. 255–56, 261, 262.]

On April 15, 2008, Plaintiff underwent a radiological examination of his cervical
spine.  [R. 331.]  Three views of the cervical spine showed moderate degenerative
changes with anterior osteophytes at the C-4 through C-7 levels.  [*Id.*]  Further,
degenerative end-plate changes were noted at the mid/lower cervical spine, but no
significant subluxations were noted.  [*Id.*]

On April 21, 2008, Plaintiff was seen by Dr. Jafer N. Gheraibeh for a consultative
examination.  [R. 333–37.]  Dr. Gheraibeh noted Plaintiff's upper and lower extremities and
gait were normal and that Plaintiff did not have joint abnormalities.  [R. 334.]  Dr.
Gheraibeh also noted Plaintiff was able to tiptoe and heel walk and squat.  [*Id.*]  Dr.
Gheraibeh indicated that Plaintiff's fine movements "were impaired sometime when there

20

is numbness of the fingers because he cannot feel the tip of his finger." [*Id.*] Dr. Gheraibeh found Plaintiff was impaired in his ability to button buttons and pick up coins (fine manipulation) but not impaired in his ability to grasp or manipulate larger objects (gross manipulation). [R. 337.] Dr. Gheraibeh found no atrophy with respect to Plaintiff's muscle bulk and a 4/5 handgrip in the left hand and a normal 5/5 handgrip in the right hand. [R. 334.] With respect to sensory loss, Dr. Gheraibeh found Plaintiff had hypoesthesia of the thumb, index, and long finger on the left hand only. [*Id.*] Dr. Gheraibeh also found deep tendon reflexes to be hyperactive on the left upper extremity possibly due to upper motor neuron lesion. [*Id.*] With respect to ROM, Dr. Gheraibeh noted limitations in flexion, extension, lateral flexion, and rotation of the cervical spine; normal flexion, extension, and lateral flexion of the lumbar spine; limitations in abduction, forward elevation, and external rotation, but no limitations in adduction and internal rotation, of the left and right shoulders. [R. 336.] Dr. Gheraibeh diagnosed chronic neck pain with neurological involvement causing numbness of the left hand with balance disturbances and coordination; possible C5-C6 disk lesion; chronic low back pain without neurological involvement; and headache secondary to the neck pain. [R. 335.]

A consultative examiner completed a physical RFC assessment on May 1, 2008. [R. 341–48.] The examiner determined Plaintiff could occasionally lift/carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, and sit about 6 hours in an 8 hour day. [R. 342.] The examiner found Plaintiff was limited in push and/or pull activities in the upper extremities and was never able to climb ladders, ropes, or scaffolds, but Plaintiff could climb ramps and stairs; balance, kneel, crouch, and crawl frequently; and stoop occasionally. [R. 342–43.] The examiner also determined

21

Plaintiff was limited in his ability to reach in all directions, including overhead; to handle; to finger; and to feel.  [R. 344.]  No visual, communicative, or environmental limitations were found.  [R. 344–45.]  The examiner noted that Plaintiff's "[s]ymptoms of pain and inability to use or lift much with the left arm and hand are partially credible based on 4/5 grip strength on the left and decreased ROM of left shoulder."  [R. 346.]

On July 27, 2008, Plaintiff was seen in the emergency room complaining of neck pain.  [R. 413–25.]  Treatment notes indicate Plaintiff had pain in his neck upon movement and muscle spasm of the neck but no soft tissue tenderness, lymphadenopathy, meningeal signs, or motor or sensory deficits.  [R. 415.]  A CT scan of the cervical spine indicated

kyphotic curvature [of] the cervical spine with relatively uniform disc spacing, most prominently decreased at the C5-C6 and C6-C7 levels.  The kyphosis shows an apex at about the C6 level.  The left-sided C-4 nerve root foramen and all right-sided nerve root foramen are narrowed by the kyphotic changes and likely also by degenerative stress remodeling to superimposed on congenital variation.

There is no evidence of fracture or paraspinous soft tissue pathology.

The endplates at C6 and C7 are slightly irregular, suggesting Schmorl's node type changes.

There does not appear to be compromise of the central spine canal.

Axial images from the craniocervical junction through the upper mediastinum shows no evidence of a focal fracture or definite compromise of neural spaces.  There is a small amount of gas in the lateral aspect of the C6 nerve root foramen at the C5-C6 level on the right side.  This may be related to extension from degenerative changes of the lateral disc margin.  This noncontrast study does not show the soft tissue well.

[R. 432.]   The impression from the CT scan was "[c]hronic cervical kyphosis with degenerative changes."  [*Id.*]

On October 22, 2008, Plaintiff was seen in the emergency room complaining of neck and back pain.  [R. 394–408.]  Treatment notes indicate Plaintiff's neck was nontender, and he had a painless ROM with no pain with movement, no muscle spasm or decreased ROM, no vertebral or soft tissue tenderness, and no lymphadenopathy or meningeal signs. [R. 395.]  Plaintiff did not exhibit motor or sensory deficits, and his reflexes were normal. [R. 396.]  In August and  October  2008, Plaintiff was seen at Franklin C. Fetter Family Health Center for complaints of back, neck, and shoulder pain, for which he was prescribed medication and referred to pain management.  [R. 436–37.]  At a follow-up appointment on January 7, 2009, the doctor noted Plaintiff had full ROM in his neck and shoulder, with no limitation in his shoulder.  [R. 435.]  The doctor also noted chronic neck pain with paresthesia and that Plaintiff had a pain management appointment pending.  [*Id.*]

On January 20, 2009, Plaintiff was seen in the emergency room complaining of upper extremity pain.  [R. 372–93.]  Plaintiff indicated he had been a pall bearer the day before, and at one point, "he felt most of the weight on him"; he now had worsening pain in his left shoulder and arm, as well as in his left hip and down his left leg. [R. 373.]  He was able to walk but had pain with weight bearing; he denied numbness, tingling, and weakness.  [*Id.*]  He stated that he needed surgery on his neck but was trying to hold out if at all possible.  [*Id.*]  On examination, he had mild pain in the posterior neck upon turning his head  to  the  right  or  left  and  soft  tissue  tenderness  but  no  meningeal  signs  or lymphadenopathy.  [R. 374.]  With respect to his back, he had no tenderness and normal ROM.  [*Id.*]  He had limited ROM and moderate tenderness in his left shoulder, but the

23

examination of his upper extremities was otherwise negative. [*Id.*] He had full ROM and no reproducible pain in his lower extremities [*id.*], although a nurse noted Plaintiff had a "limping gait" [R. 378].

On October 19, 2009, Plaintiff was seen in the emergency room complaining of neck, shoulder, and hip pain. [R. 350–71.] Treatment notes document that Plaintiff had chronic, intermittent neck pain stemming from two crushed cervical vertabrae he sustained playing football fifteen years earlier. [R. 353.] On examination, Plaintiff's neck was nontender, but he had mild vertebral tenderness of the mid cervical spine. [*Id.*] Plaintiff also had limited ROM in the back with no tenderness; non-tender extremities; an abnormal gait due to weakness in the left lower extremity and pain; and low back pain with left straight leg raises. [R. 354.] A nurse noted Plaintiff had experienced moderate neck pain radiating to his left shoulder and upper back and that his left hip went numb. [R. 355.] The clinical impression noted was chronic neck pain (acute on chronic) and chronic back pain (acute on chronic). [R. 354.]

On April 16, 2010, Plaintiff was seen in the emergency room for complaints of pain after having fallen down the stairs at home. [R. 459–60.] In relating his medical history, Plaintiff stated to a nurse that he has episodes of falling and passing out. [R. 460.] Plaintiff left the emergency room without being seen by a physician and indicating to the staff that he felt better and did not want to be seen. [*Id.*] On May 13, 2010, Plaintiff was seen in the emergency room with complaints of neck pain. [R. 449–58.] Treatment notes indicate Plaintiff's neck had a painless ROM and no vertebral tenderness, but he had mild soft tissue tenderness in the left mid and lower neck area. [R. 450.] Plaintiff described his neck pain as sharp and as going from his neck to his left leg, radiating all the way down the

24

left side of his body.  [R. 452.]  Within an hour, Plaintiff left the emergency room indicating his pain level was 0/10.  [R. 453.]

On June 29, 2010, Plaintiff was seen in the emergency room with complaints of neck and back pain.  [R. 444–47.]  Treatment notes indicate a nontender neck and back with painless ROM and no motor or sensory deficits.  [R. 445.]  Plaintiff was prescribed Naproxen and Tylenol with codeine.  [*Id.*]

On August 26, 2010, Plaintiff was seen in the emergency room complaining of back pain.  [R. 464.]  On examination, Plaintiff had a painless ROM and no muscle spasm, decreased ROM, vertebral tenderness, or meningeal signs, although he did have soft tissue tenderness in the right mid and lower neck area and left mid and lower neck area. [R. 464–65.]  With respect to his back, Plaintiff had soft tissue tenderness in the right lower, left lower, and central lumbar area but no muscle spasm, vertebral point tenderness, CVA tenderness, or limitation in ROM.  [R. 465.]  The clinical impression was chronic cervical herniated disc and chronic back pain, lumbar herniated disc, but the clinical picture did not suggest spinal cord compression or fracture.  [*Id.*]  Plaintiff was given Motrin and indicated he felt better and did not want to have the x-ray ordered by the physician. [R. 470.]

## APPLICATION AND ANALYSIS

### Listing Analysis

Plaintiff contends the ALJ erred in evaluating whether Plaintiff's impairment met or equaled Listing 1.04A by overlooking or ignoring the following evidence of record:

•    nerve root compression at the left C4 nerve root level;

25

- neuro-anatomic distribution of pain;

- limited motion of neck and spine;

- motor loss and muscle weakness; and

- sensory and reflex loss.

[Doc. 18 at 30 (citing R. 250, 270, 274, 288, 309, 334, 336–37, 354, 355, 374, 378, 432, 452).]  Plaintiff also contends the ALJ's decision is in error because the ALJ failed to explain why he determined Plaintiff did not meet Listing 1.04A.  [*Id.* at 30–32.]

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that, without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*,  No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).  Here, the ALJ determined Plaintiff's degenerative disc disease was a severe impairment, and the ALJ considered whether Plaintiff's degenerative disc disease met Listing 1.04.  [R. 13.]  Listing 1.04 provides as follows:

> 1.04   Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

26

> A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.  The ALJ found Plaintiff's impairment did not meet Listing 1.04 because the "evidence of record fail[ed] to indicate that the claimant suffer[ed] from a disorder of the spine resulting in nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication."  [*Id.*]

Upon review, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence because the ALJ failed to explain why the evidence identified by Plaintiff as supporting his claim that his impairment meets Listing 1.04A was insufficient to support such a finding.  It is the duty of the ALJ to resolve conflicts in the evidence of record.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (1990).  However, without a discussion of the conflicting evidence, it is difficult for a reviewing court to (1) track the ALJ's reasoning and be assured that all record evidence was considered and

27

(2) understand how the ALJ resolved conflicts in the evidence. *See Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) ("[S]o long as the narrative opinion *is sufficien[tl]y detailed and cogent on the ultimate issues* for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal." (emphasis added)).

Moreover, the responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527); *see* 20 C.F.R. § 416.927 (codifying these factors with respect to SSI claims). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). Further, while the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Mastro*, 270 F.3d at 178; *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

28

Here, as stated, the ALJ summarily concluded that the "evidence of record fail[ed] to indicate that the claimant suffer[ed] from a disorder of the spine resulting in nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication." [R. 13.]  However, as Plaintiff notes, there is evidence in the record that his impairment exhibited each of the criteria of Listing 1.04A:

    (1)     nerve root compression [R. 432];

    (2)     neuro-anatomic distribution of pain [R. 270, 308, 335, 355, 452];

    (3)     limited motion of the neck and spine [R. 250, 288, 309, 336–37, 374];

    (4)     motor loss and muscle weakness [R. 334, 354, 378, 452]; and

    (5)     sensory and reflex loss [R. 270, 277, 334, 337].[10]

While the ALJ acknowledged some of this evidence in his discussion of his RFC assessment [*see* R. 15–16 (noting, for example, that Plaintiff "reported chronic neck pain radiating to the left shoulder" and that Plaintiff "had an abnormal gait due to weakness in the left lower extremity and pain, as well as left arm weakness")], the ALJ failed to offer any explanation as to how this evidence informed any portion of his decision.  Moreover, the

---

[10]The Commissioner contends Listing 1.04 should be read as requiring evidence of the following criteria: (1) a disorder of the spine, (2) compromise of a nerve root or the spinal cord, and (3) each of the criteria listed in subparts A, B, or C.  [Doc. 20 at 10–11.]  However, the Commissioner fails to cite any source supporting her interpretation of Listing 1.04.  Without more, the Court agrees with Plaintiff that "compromise of a nerve root or the spinal cord" is not a separate criterion.  [Doc. 22 at 3–4.]  Rather, subparts A, B, and C list criteria that must be met for a claimant to demonstrate his impairment is a disorder of the spine resulting in compromise of a nerve root or the spinal cord—that is, to demonstrate the claimant's impairment is a sufficiently severe disorder of the spine to conclude the claimant is disabled without determining the claimant's RFC.  *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.").

    The Commissioner also contends Plaintiff failed to present evidence of compromise of a nerve root or the spinal cord because Plaintiff's CT scans revealed no significant encroachment of the spinal cord and no definite compromise of the central spinal canal.  [Doc. 20 at 10 (citing R. 430, 432).]  However, there is no indication that these remarks refer to both "compromise of a nerve root" and "compromise of the spinal cord"; rather, these remarks seem to inform only whether there was compromise of Plaintiff's spinal cord.  As discussed below, a more detailed explanation by the ALJ could resolve this ambiguity in the record.

ALJ also discussed evidence that conflicts with the evidence that Plaintiff's impairment meets Listing 1.04A, but the ALJ's decision does not contain any discussion of how he resolved the conflicts in the evidence. [*See* R. 14–16.] Further, the following portions of the ALJ's decision are the only indications of what evidence the ALJ discredited:

> The medical evidence of record indicates that while the claimant has received treatment for degenerative disc disease with chronic neck and shoulder pain since his alleged onset date, the claimant's pain symptoms are not as limiting as he alleges. . . .
>
> . . . While the claimant was also assessed with balance disturbance [following a consultative examination in April 2008], I give little weight to this as he as able to tiptoe, heel walk and squat apparently without losing balance.
>
> . . . .
>
> The claimant's reports of blurred vision and dizziness[] are unsupported by the medical evidence of record. . . . Moreover, while the claimant presented to the hearing with a cane, there is no evidence that it is a medical necessity. While at times he was noted to have a mild limp, records do no indicate the claimant had problems ambulating.  As for the claimant's testimony of left arm weakness, examinations of the claimant's extremities were generally normal.
>
> . . . .
>
> Regarding the medical opinions of the DDS medical consultants, I accord them significant weight in effectively restricting the claimant from climbing ladders or performing work that requires more than occasional stooping or overhead reaching with the left upper extremity.  In regard to additional DDS findings restricting the claimant from performing work taht requires more than limited handling, fingering, and feeling, I accord them little weight due to lack of substantial support from the other evidence of record.  As a result of pain, I have also limited the claimant to performing simple routine, repetitive tasks.

[R. 15–16 (internal citations omitted).]   Thus, with respect to the evidence supporting Plaintiff's claim that his impairment meets Listing 1.04A, without a discussion of how the ALJ weighed and resolved conflicts in the evidence, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain his listing analysis is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to consider all of Plaintiff's impairments; adequately assess and explain Plaintiff's RFC; and properly assess Plaintiff's credibility.

## CONCLUSION

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2013
Greenville, South Carolina

31